**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **DEMETRIO VENITSKY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC;** and **TRANS UNION, LLC,**<br><br>*Defendants.* | Civil Action No.: 1:26-cv-10181<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Demetrio Venitsky ("Plaintiff" or "Mr. Venitsky"), by and through undersigned counsel, brings this action against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("TransUnion," and together with Experian and Equifax, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an identity-theft case in which every safeguard the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, imposes between an innocent consumer and a six-figure fraud failed, not once, but over and over, for more than a year.

2. In late 2024, Daryl Turner ("Turner") used Mr. Venitsky's name, Social Security number, and date of birth to open several American Express ("Amex") Business Platinum card accounts under Turner's company, TS Transitions LLC, designating Mr. Venitsky as the purported guarantor, primary, or cosigner of each. Mr. Venitsky never applied for, authorized, signed for, used, or benefited from, or agreed to serve as a guarantor on, any of these accounts.

3. The principal balance at issue is approximately $150,000.

4. Mr. Venitsky did everything the law asks of an identity-theft victim, and more. He obtained a police report. He filed a sworn identity theft report with the Federal Trade Commission. He sent written disputes, by certified mail, to all three national credit bureaus, repeatedly, enclosing the police report and proof of his identity and, beginning with the May 2026 mailings, the sworn FTC identity theft report, and expressly invoking his right to a block under 15 U.S.C. § 1681c-2. He disputed through the bureaus' online portals.

5. On June 17, 2026, he delivered to AMEX a signed, written confession from Turner himself, acknowledging that the accounts were Turner's doing and that Mr. Venitsky "did not authorize, control, manage, or knowingly assume responsibility" for the debts.

6. Defendants nonetheless "verified" the fraudulent tradeline and failed to permanently block it.

7. While the fraudulent accounts polluted his consumer file, Mr. Venitsky, a consumer with an otherwise clean, paid-in-full credit history, was denied a $354,000 home-equity line of credit by TD Bank on June 10, 2026, based expressly on a consumer report bearing the fraudulent derogatory information. Mr. Venitsky brings this action to clear his name, to end the reporting and collection of a debt that was never his, and to recover the actual, statutory, and punitive damages the FCRA provides.

## PARTIES

8. Plaintiff Demetrio Venitsky is a natural person residing in Voorhees, Camden County, New Jersey. He is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

9. Defendant Experian Information Solutions, Inc. is a corporation with its principal place of business in Costa Mesa, California, doing business in New Jersey. Experian is a "consumer reporting agency" as that term is defined in 15 U.S.C. § 1681a(f), regularly engaged in the business

of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties.

10. Defendant Equifax Information Services, LLC is a limited liability company with its principal place of business in Atlanta, Georgia, doing business in New Jersey. Equifax is a "consumer reporting agency" as that term is defined in 15 U.S.C. § 1681a(f).

11. Defendant Trans Union, LLC is a limited liability company with its principal place of business in Chicago, Illinois, doing business in New Jersey. Trans Union is a "consumer reporting agency" as that term is defined in 15 U.S.C. § 1681a(f).

12. Non-party American Express National Bank issued the four Business Platinum card accounts at issue and furnished information concerning those accounts to Defendants.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, because this action arises under the FCRA.

14. This Court has personal jurisdiction over each Defendant. Each Defendant regularly conducts business in New Jersey; the fraudulent accounts were reported into the consumer files of a New Jersey resident; the dispute correspondence was sent from, and the injuries were suffered in, New Jersey; and each Defendant purposefully directed its credit-reporting activities at New Jersey.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, where Plaintiff resides and where the credit denials and other harms were suffered. Because Plaintiff resides in Camden County, this action is properly assigned to the Camden vicinage.

## STATUTORY FRAMEWORK

### *The FCRA's Protections for Identity-Theft Victims*

16. Section 1681e(b) of the FCRA commands:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

17. The duty is one of "maximum possible accuracy," not mere technical accuracy. Information is "inaccurate" under the FCRA when it is patently incorrect or when it is "misleading in such a way and to such an extent that it can be expected to have an adverse effect," including on credit decisions. *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

18. Section 1681i requires that, upon a consumer's dispute, a consumer reporting agency conduct a free and "reasonable reinvestigation to determine whether the disputed information is inaccurate," generally within thirty days, and delete or modify any item of information that is found to be inaccurate, incomplete, or that cannot be verified. 15 U.S.C. § 1681i.

19. The reinvestigation duty is a "grave responsibilit[y]" that "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *see Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010).

20. Section 1681c-2, enacted specifically for identity-theft victims, requires a consumer reporting agency to *block* the reporting of any information in a consumer's file that the consumer identifies as resulting from identity theft, within four business days of receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) identification of the information at issue, and (4) the consumer's statement that the information does not relate to any transaction of the consumer.

21. A willful violation of any of these provisions, including one committed in reckless disregard of the statute, i.e., conduct entailing "an unjustifiably high risk of harm that is either

known or so obvious that it should be known," exposes the violator to actual or statutory damages of $100 to $1,000 per violation, punitive damages, and attorneys' fees. 15 U.S.C. § 1681n; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 68–69 (2007).

## FACTUAL ALLEGATIONS

22. In late 2024, Turner, using Mr. Venitsky's name, Social Security number, and date of birth, opened several American Express Business Platinum card accounts under Turner's Florida company, TS Transitions LLC, apparently designating Mr. Venitsky as the purported "guarantor," cosigner, or primary signer of each.

23. The accounts were wholly unauthorized. Mr. Venitsky never applied for them, never authorized them, never signed any application or guaranty, never received or used any card issued on them, never received any statement in the ordinary course (statements were addressed to a Sarasota, Florida address that was not his), never received any goods, services, or money as a result of them, and never agreed to serve as a guarantor of them.

24. Amex's own "Application Information" form for at least one of the accounts reflects that the application was received online on December 4, 2024, and was submitted from Turner's telephone number, Turner's IP address, and Turner's e-mail address, not from any device, number, or address associated with Mr. Venitsky.

25. Approximately $150,000 in charges was incurred on the accounts, all of it by Turner and/or his company TS Transitions LLC.

26. Upon information and belief, Daryl Turner is the same Daryl Turner who, as announced by the New Jersey Office of the Attorney General (the "NJ OAG") on or about January 31, 2014, was sentenced to seven years in New Jersey state prison by the Superior Court, Burlington County, after pleading guilty to second-degree theft by deception for stealing millions of dollars from

hundreds of customers of his vacation-travel-club companies. Per the Attorney General's office, Turner executed a consent judgment to pay approximately $2.6 million in restitution, forfeited his Marlton, New Jersey home and cars and a boat; the State's investigation also found that Turner with his wife allegedly laundered more than $700,000 in criminal proceeds.

27. The 2014 conviction was not this Turner's first brush with consumer-fraud enforcement. According to the NJ OAG, the New Jersey Division of Consumer Affairs filed its initial civil complaint against Turner and his travel companies in 2009; in February 2011, Turner agreed to a settlement of more than $3 million, including over $2,188,000 in consumer restitution, and to refrain from working in, owning, or operating travel or vacation-club companies in New Jersey for five years. The NJ OAG further reported that the Division later discovered Turner was involved in operating Travel Deals and had failed to disclose assets, that a new civil complaint followed in June 2011, and that Turner was arrested on theft charges in July 2011.

28. The pattern allegedly continued. On August 5, 2026, 6abc Action News reported that a review of New Jersey and Florida corporate records associated Turner with several companies using variations of the "TS Holdings" name, and that the Ohio Attorney General's Office was suing TS Holdings Unlimited of Cherry Hill, New Jersey, alleging losses to seven consumers totaling nearly $70,000. Mr. Venitsky has no connection to TS Transitions LLC or to any Turner-controlled business.

29. In or about April 2026, the Voorhees Township Police Department issued a Victim Notification Form reflecting charges against Turner for wrongful impersonation, and later that month it issued a Supplementary Investigation Report identifying fraudulent Amex accounts opened in Mr. Venitsky's name.

30. On May 5, 2026, Mr. Venitsky completed a sworn Federal Trade Commission Identity Theft Report, No. 200875607, identifying the fraudulent accounts as the product of identity theft.

31. By letter dated April 27, 2026, addressed to each of Experian, Equifax, and TransUnion, Mr. Venitsky notified Defendants that he was a victim of identity theft; enclosed his government-issued identification, proof of address, the police report, and information from his credit report; identified the fraudulent accounts and related activity; stated that they were not his; and expressly requested that each bureau (1) place an extended fraud alert on his file, (2) add a credit freeze, and (3) "[b]lock and remove any fraudulent accounts, inquiries, or information resulting from this identity theft." On or after May 5, 2026, he also enclosed the FTC Identity Theft Report.

32. Mr. Venitsky mailed the April 27, 2026, dispute package to all three CRA Defendants by certified mail on April 29, 2026, and mailed further certified dispute packages to all three CRA Defendants on May 6, 2026, with followup on May 19, 2026, as demonstrated by certified mail.

33. By a further written dispute to each CRA Defendant, Mr. Venitsky identified three addresses appearing in his file that were not and had never been his, in Sarasota, Florida; Berlin, New Jersey; and Alloway, New Jersey, and requested that they be investigated and removed.

34. Mr. Venitsky also disputed through the bureaus' own channels, repeatedly: Equifax, Experian, and TransUnion records each show several rounds of FCRA-complaint dispute investigations and results, each, in May, June, and July 2026.

35. On June 1, 2026, Turner signed a written "Responsibility Statement" acknowledging that TS Transitions LLC is his company, that he was responsible for opening and managing the accounts, that Mr. Venitsky "did not authorize, control, manage, or knowingly assume responsibility" for the debts, and asking that Mr. Venitsky be removed as guarantor and that all

credit reporting be corrected. Mr. Venitsky also disputed directly with Amex in writing, repeatedly, including by enclosing Turner's signed confession.

36. Upon information and belief, upon receipt of each of Mr. Venitsky's disputes, each CRA Defendant transmitted notice of the dispute to Amex through the e-OSCAR system by means of an Automated Consumer Dispute Verification ("ACDV") form, and Amex responded by "verifying" the fraudulent tradelines.

37. Rather than perform the independent reinvestigation the statute and *Cushman* and *Cortez* require, each CRA Defendant simply parroted back the say-so of a furnisher whose denials of the fraud claim lacked any rational basis, and continued reporting the fraudulent information, notwithstanding the police report and the sworn FTC Identity Theft Report.

38. The CRA Defendants did no independent investigation beyond basic ACDV-response-parroting. An independent investigation would have turned up Turner's public convictions and signed confession in the record and caused them to permanently block and delete the account.

39. Defendants failed to investigate and permanently delete the account from their files, in violation of the FCRA, and failed to maintain reasonable procedures to ensure that it would not merely parrot Amex's responses in dispute results and subsequent reports.

40. For example, Experian's dispute results recorded the Amex tradeline and disputed address information as merely "Updated," not deleted or blocked. As of August 4, 2026, Experian continued to report an American Express account, opened December 4, 2024, with a derogatory, written-off balance of over $130,000. Equifax and Trans Union, too, verified the account. Defendants failed to block it in accordance with the FCRA. For another example, Equifax explicitly declined to block, and instead demanded still more documentation by letter dated May 7, 2026.

41. In early May 2026, Mr. Venitsky applied to TD Bank, N.A. for a home-equity line of credit.By a Statement of Credit Denial, Termination, or Change dated June 10, 2026, TD Bank denied the application. The statement disclosed that the credit decision was based in whole or in part on a consumer report, including key adverse factors of serious delinquency and amounts past due. Mr. Venitsky had no delinquent obligations of his own; the derogatory information was Turner's fraud, reported into Mr. Venitsky's consumer file by Defendants after disputes and block demands. During the application process, which was within the block timeframe, and at its failed close, which was within the deletion timeframe, Mr. Venitsky's credit was tarnished, and Mr. Venitsky cannot in good faith reapply for this credit opportunity because he knows his credit remains tarnished from the fraudulent accounts. An application would be futile.

42. Each CRA Defendant acted willfully, or at minimum in reckless disregard of its statutory duties, within the meaning of 15 U.S.C. § 1681n and *Safeco*, 551 U.S. at 57, 68–69.

43. Each CRA Defendant received detailed documentary evidence of identity theft, including a police report, a sworn FTC Identity Theft Report, and a statutory block request, and nonetheless continued reporting and repeatedly accepted Amex's verification despite evidence contradicting it. Plaintiff alleges that the pertinent requirements of §§ 1681e(b), 1681i, and 1681c-2 are longstanding and clear and that Defendants' repeated noncompliance was reckless rather than the result of a reasonable interpretation of the statute.

44. As a direct and proximate result of Defendants' conduct, Mr. Venitsky, who otherwise had a clean, paid-in-full credit history, has suffered, and continues to suffer, actual damages including:

a. denial of the $354,000 TD Bank home-equity line of credit on June 10, 2026, and the loss of the credit terms and opportunities that accompanied it;

b. the depression of his credit scores, the resulting harm to his creditworthiness and credit opportunities, and the futility of reapplying for credit while the fraudulent information remains on his file;

c. out-of-pocket costs for certified and overnight mailings, copies, and related dispute expenses, in the hundreds of dollars;

d. dozens of hours spent on disputes, police and FTC reports, and correspondence; and

e. emotional distress, anxiety, humiliation, and damage to his reputation, including the strain of being pursued for a $150,000 debt manufactured in his name and incurably, publicly associated with a convicted thief and his company.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against Experian, Equifax, and TransUnion)**

45. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

46. Each CRA Defendant prepared and furnished consumer reports concerning Plaintiff that contained inaccurate and materially misleading information. The CRAs knew Plaintiff's real address and identifying information and the identifying information, including address information on the Amex account and other data supplied by Amex upon information and belief conflicted with Plaintiff's known information.

47. Each CRA Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information in Plaintiff's file, accepting and re-reporting facially fraudulent data into the file of a consumer with an otherwise unblemished history, and continuing to do so after receiving conclusive documentary proof of identity theft.

48. As a direct and proximate result, inaccurate consumer reports were furnished to third parties, including the consumer report and score furnished in connection with the TD Bank application, and Plaintiff suffered the damages alleged above.

49. Each CRA Defendant's conduct was willful under 15 U.S.C. § 1681n, entitling Plaintiff to actual or statutory damages, punitive damages, and fees and costs; in the alternative, negligent under 15 U.S.C. § 1681o, entitling Plaintiff to actual damages and fees and costs.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Conduct a Reasonable Reinvestigation and to Delete Unverifiable Information**
**(Against Experian, Equifax, and TransUnion)**

50. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

51. Plaintiff disputed the completeness and accuracy of the fraudulent tradelines and addresses directly with each CRA Defendant, in writing by certified mail and through each bureau's dispute channels several times between April and July 2026.

52. Each CRA Defendant failed to conduct a reasonable reinvestigation of the disputed information. Rather than consider the police report, the sworn FTC Identity Theft Report, and the other record evidence Plaintiff supplied, each CRA Defendant merely re-transmitted the dispute to the furnisher by ACDV, accepted its "verification," and parroted the result, in violation of 15 U.S.C. § 1681i.

53. Each CRA Defendant further failed to delete information that was inaccurate, incomplete, or could not be verified, in violation of 15 U.S.C. § 1681i(a)(5)(A), as demonstrated by Experian's continued reporting of the Amex tradeline as of August 4, 2026, and by each bureau's repeated "verification" of tradelines that Turner's signed confession and the application records prove fraudulent.

54. Each CRA Defendant's conduct was willful under 15 U.S.C. § 1681n; in the alternative, negligent under 15 U.S.C. § 1681o.

**COUNT III**
**15 U.S.C. § 1681c-2**
**Failure to Block Information Resulting from Identity Theft**
**(Against Experian, Equifax, and TransUnion)**

55. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

56. By no later than each CRA Defendant's receipt of Plaintiff's May 2026 dispute packages, Plaintiff had furnished appropriate proof of his identity, a copy of his FTC Identity Theft Report and police report, identification of the fraudulent accounts, inquiries, and address information resulting from the identity theft, and his statement that the information did not relate to any transaction by him, expressly requesting that each bureau "[b]lock and remove any fraudulent accounts, inquiries, or information resulting from this identity theft."

57. Each CRA Defendant was thereupon required to block the identified information from appearing in Plaintiff's consumer reports within four business days and promptly to notify the furnisher. 15 U.S.C. § 1681c-2. No CRA Defendant timely blocked the information. The fraudulent tradelines and addresses continued to appear in, and be furnished from, Plaintiff's files for months, including in the report and score furnished in connection with the TD Bank denial.

58. No CRA Defendant made or communicated any lawful determination declining or rescinding a block under 15 U.S.C. § 1681c-2(c); nor could it have in good faith, because Plaintiff obtained no goods, services, or money as a result of the blocked transactions and misrepresented no fact material to the block, and it was not requested in error.

59. Each CRA Defendant's conduct was willful under 15 U.S.C. § 1681n; in the alternative, negligent under 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant(s), and award:

a. actual damages under 15 U.S.C. §§ 1681n and 1681o;

b. statutory damages of $100 to $1,000 per violation under 15 U.S.C. § 1681n(a)(1)(A);

c. punitive damages under 15 U.S.C. § 1681n(a)(2);

d. reasonable attorneys' fees and costs of suit under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

e. pre-judgment and post-judgment interest as allowed by law; and

f. such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned certifies under penalty of perjury that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, except that Plaintiff may proceed in court and/or arbitration against Amex.

Dated: August 11, 2026

Respectfully submitted,

*/s/ Noah Kane*
Noah Kane [NJ No. 428282023]
KANE LAW FIRM LLC
550 Kinderkamack Rd, Ste 124
Oradell, NJ 07649
T: (267) 832-2657
E: noah@njconsumer.com

*Attorney for Plaintiff Demetrio Venitsky*